UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R-STREAM, LLC, A FLORIDA LIMITED
LIABILITY COMPANY,

    Plaintiff,

v.                     Case No.: 8:08-cv-2221-T-33EAJ

WINGSTOP RESTAURANTS, INC., A
TEXAS CORPORATION,

    Defendant.
_____/

## ORDER

This cause is before the Court pursuant to Defendant's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), filed on May 21, 2009. (Doc. # 15, the "Motion"). On July 11, 2009, Plaintiff filed a response in opposition to the Motion. (Doc. # 24). For the reasons that follow, the Motion is due to be granted in part and denied in part.

## I. Factual Background and Procedural History

The following factual discussion, taken from Plaintiff's Complaint, is accepted as true for the purpose of addressing the Motion. Plaintiff R-Stream is a Florida limited liability company with its principal place of business in Pinellas County, Florida. (Doc. # 2 at ¶ 1). Plaintiff is the managing member of and successor in interest to Restaurant Stream, L.C., a Florida limited liability company that offers

point-of-sale ("POS") business management information services based upon proprietary software developed for the restaurant industry. (Id. at ¶¶ 6-7).

Defendant Wingstop Restaurants, Inc., is a Texas corporation that owns, operates, and franchises restaurants nationwide under the "Wing.Stop"® name. (Id. at ¶ 3). Between February 2005, and April 2005, Defendant's executives and employees met with Plaintiff's representatives to discuss Plaintiff's products and services. (Id. at ¶ 8). Subsequently, Defendant asked Plaintiff to develop a proposal for customizing its point-of-sale products for Defendant. (Id. at ¶ 9). In preparing the proposal, Plaintiff was to presume that all of Defendant's Wingstop locations would implement and use Plaintiff's products. (Id.)

In July 2005, Plaintiff presented to Defendant the Scope Document, a proposal for the project known as the Wingstop Information Technology Initiative (WSIT). (Id. at ¶¶ 9-10). Plaintiff subsequently participated in several additional meetings with Defendant, and made presentations to Defendant's franchisees, related to the WSIT. (Id. at ¶ 13). Defendant never signed the Scope Document. Nevertheless, Defendant directed Plaintiff to proceed with the WSIT, and Defendant accepted and tested several versions of Plaintiff's product.

2

(Id. at ¶ 14). Defendant later requested several changes and upgrades to the product, which Plaintiff completed to benefit Defendant. (Id. at ¶ 15).

Plaintiff required Defendant to make the WSIT mandatory for all Wingstop locations in order to offset the cost of the software customization. (Id. at ¶ 11). However, Defendant refused to require that all Wingstop locations implement the product. (Id. at ¶ 22). In addition, when Defendant learned that several franchisees had expressed interest in utilizing the WSIT, Defendant refused to allow them to do so. (Id. at ¶ 39).

On June 23, 2008, Plaintiff filed a four-count complaint against Defendant in state court. (Doc. ## 1, 2) Defendant removed the complaint to this Court on November 5, 2008, on the basis of diversity of citizenship. 28 U.S.C. § 1332.

In Count One, Plaintiff alleges that Defendant breached the contract when Defendant refused to require all Wingstop locations to participate in the WSIT. (Id. at ¶ 22).[1] In Count Two, Plaintiff asserts a claim for promissory estoppel on the grounds that Defendant promised to require all Wingstop locations to participate in the WSIT (Id. at ¶ 27), causing

---

[1] Although not signed by Defendant, Plaintiff contends that the Scope Document is an enforceable contract.

Plaintiff to expend time and money performing work in reasonable reliance upon the promise. (Id. at ¶¶ 32-33).

In Count Four, Plaintiff alleges that Defendant tortiously interfered with Plaintiff's business relationship with Wingstop franchisees when it refused to allow its franchisees to use the WSIT. (Id. at ¶ 39).[2] In Count Five, Plaintiff alleges fraud in the inducement on the grounds that Defendant falsely represented that it would make the WSIT mandatory for all locations, knowing that it had no actual intention of doing so (Id. at ¶ 45), and that Plaintiff reasonably relied upon Defendant's representations. (Id. at ¶ 47)

On May 21, 2009, Defendant filed the Motion (Doc. # 15), which is ripe for the Court's review.

## II. **Standard of Review**

A motion for judgment on the pleadings may be granted "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998)(citing Slagle v. ITT Hartford, 102

---

[2] The Complaint does not include a Count III.

F.3d 494, 497 (11th Cir. 1996) and <u>Herbert Abstract Co. v. Touchstone Props., Ltd.</u>, 914 F.2d 74, 76 (5th Cir. 1990)). When considering a motion for judgment on the pleadings, the Court must "accept the facts alleged in the complaint as true and draw all inferences that favor the nonmovant." <u>Id.</u>

III. **Analysis**

    A. **Incorporation by Reference Doctrine**

As a threshold matter, the Court notes the Motion has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[3] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)).

---

[3] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion . . ." Fed. R. Civ. P. 12(c); see <u>Bankers Ins. Co.</u>, 137 F.3d at 1295 (stating that a court may consider judicially noticed facts as an exception to the conversion and notice rules).

5

The incorporation by reference doctrine allows the Court to consider a document attached to the pleadings without converting a Rule 12(c) motion into a motion for summary judgment if the document is central to the claim and its authenticity is not challenged. <u>Dawley v. NF Saving Corp. of Am.</u>, 6:07-cv-872-Orl-DAB, WL 4534263, at *1 (M.D. Fla. Oct. 6, 2008).

Here, the Court has considered only the Complaint (Doc. # 2), Exhibit A to the Complaint (Doc. #2-2, the Scope Document), and Defendant's Answer (Doc. # 4). It cannot be disputed that Exhibit A is central to Plaintiff's claims against Defendant. While the parties dispute the legal import of the Scope Document, the parties have not questioned the authenticity of the Scope Document. Thus, this matter is not converted into a summary judgment analysis.

**B.   Summary of Defendant's Arguments**

Defendant argues that judgment on the pleadings is appropriate as to each count of the Complaint. As to Count One, for breach of contract, Defendant asserts that the Scope Document is not a valid contract. Among other arguments, Defendant argues that the Statute of Frauds bars Plaintiff's breach of contract claim. (Doc. # 15 at ¶ 2).

As to Count Two, for promissory estoppel, Defendant argues that Florida law prohibits Plaintiff's recovery under promissory estoppel as an alternative to a contract claim that fails under the Statute of Frauds. (Id. at ¶ 3). Similarly, Defendant argues that the Statute of Frauds prohibits Plaintiff's fraud in the inducement claim, asserted in Count Five. (Id.) Defendant also asserts that Plaintiff has failed to plead all of the elements of fraudulent inducement. (Id. at 15).

Furthermore, Defendant asserts that Plaintiff's tortious interference claim, asserted in Count Four, fails because Defendant was directly involved in Plaintiff's business relationships with franchisees, any business opportunities with the franchisees flowed from Plaintiff's business relationship with Defendant, and Defendant had a right to protect its interests. (Id. at ¶ 4). The Court will address each of these theories in turn.

### C. Breach of Contract

Defendant argues that the Statute of Frauds bars Plaintiff's breach of contract claim, asserted in Count One, because the Scope Document (the alleged contract) was not signed by Wingstop. Defendant asserts that the agreement between the parties involved a sale of goods valued at more

7

than $500 and therefore must have been signed to be enforceable under the Florida Uniform Commercial Code (UCC) Statute of Frauds, Fla. Stat. § 672.201 (2004). (Id. at 11).

Alternatively, Defendant argues that even if the agreement involved services, rather than the sale of goods, it cannot be enforced under the Florida Statute of Frauds, Fla. Stat. § 725.01 (2000), because it cannot be performed within one year.[4] (Id. at 12).

### 1. **Sale of Goods**

Under the Florida UCC Statute of Frauds, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless . . . signed by the party against whom enforcement is sought." Fla. Sta. § 672.201. "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid." Fla. Stat. § 672.105.

When a contract involves both goods and services, such as in the present case, the "predominant factor test" helps the

---

[4] The Florida Statutes reference the Statute of Frauds at two points relevant to Defendant's arguments. The first comes under Chapter 672, the Uniform Commercial Code: "Sales." Fla. Stat. § 672.201. The second falls under Chapter 725, "Unenforceable Contracts." Fla. Stat. § 725.01.

8

Court determine if the UCC Statute of Frauds applies. <u>BMC Indus., Inc. v. Barth Indus., Inc.</u>, 160 F.3d 1322, 1329 (11th Cir. 1998). The three factors to be considered under the predominant factor test include (1) the language of the contract, where words such as "purchase" and "buyer" suggest a sale of goods; (2) whether the cost of goods exceeds the cost of services; and (3) whether the goods were movable at the time the contract was made. <u>Id.</u> at 1330.

As noted, the Scope Document outlining the terms of the WSIT was not signed by Defendant. However, after examining the Scope Document, this Court is not persuaded that the transaction between the parties was predominantly for the sale of goods. Although Defendant correctly points out that Courts generally consider software licenses to be "goods," nowhere does the Scope Document state that the agreement involves a "software license." <u>Tingley Sys., Inc. v. Healthlink, Inc.</u>, 509 F.Supp.2d 1209, 1214 at n.3 (M.D. Fla. 2007).

The "Cost Summary" section of the Scope Document includes five items: "Data Warehouse annual subscriptions," technical support, Point of Sale equipment, extended warranty on the Point of Sale equipment, and "programming requests beyond the Scope Document" to be billed at an hourly rate. (Doc. # 2-2 at § 5). The data warehouse, described in a separate section,

9

involves the creation of a database, to be maintained on Plaintiff's servers in San Diego, California, that would collect and store data transmitted by participating restaurants, and "the creation of programs to enable the export of collected data" to other software. (Id. at § 2).

Applying the "predominant factor" test to this mix of goods and services, first, the Court does not find any language in the Scope Document suggesting a "purchase" by a "buyer." Rather, participating restaurants are referred to throughout as "subscribers." (Id.) Second, the cost of the Point of Sale equipment, ranging from $2,995 to $3,395, exceeds the cost of the $1,074 annual subscription. However, the Scope Document indicates that the equipment purchase is optional.[5] (Id. at § 5). Finally, while software is theoretically movable, the Scope Document specifies that the data warehouse would be maintained on Plaintiff's servers and not transferred to Defendant. (Id. at § 2).

This analysis indicates that a set of facts exists that, if proven, would support Plaintiff's breach of contract claim despite the fact that the agreement was not signed. Thus, the

---

[5] The Scope Document states that if a subscriber uses a POS system other than those specified, "the subscriber will be solely responsible for paying RS's costs to design and/or modify its integration to the RS system."

Court denies the Motion on the basis that the claim is barred by the Florida UCC Statute of Frauds concerning goods. The Court now moves to Defendant's alternative theory, that enforcement of the contract is barred by the Florida Statute of Frauds because it cannot be performed within one year.

### 2. **Performance within One Year**

Under the Florida Statute of Frauds, "any agreement that is not to be performed within the space of 1 year from the making thereof" must be signed by the party against whom enforcement is sought. Fla. Sta. § 725.01. The Court must consider the intent of the parties, which "may be inferred from the 'surrounding circumstances' or 'object to be accomplished,'" in determining whether the contract was to be performed within one year. Dwight v. Tobin, 947 F.2d 455, 459 (11th Cir. 1991) (quoting Yates v. Ball, 181 So. 341, 344 (1937)).

Defendant asserts that the "Implementation Schedule," running from approximately August 1, 2005, through October 9, 2005, coupled with the one-year subscriptions that would theoretically commence sometime thereafter, prohibits performance within one year, barring enforcement of the contract under the Florida Statute of Frauds. (Doc. # 15 at 12). Plaintiff counters that its obligation to complete the

11

implementation, and Defendant's corresponding obligation to ensure that all Wingstop locations participate, could be completed within one year. (Doc. # 24 at 7).

Evaluating the pleadings in a light most favorable to Plaintiff, as the nonmovant, the Court is persuaded by Plaintiff's argument that the Florida Statute of Frauds does not apply. The stated purpose of the Scope Document is to define the "features and functions" of the WSIT to be supplied by Plaintiff. (Doc. # 2-2). The Scope Document further states that Defendant is to compel all Wingstop locations to subscribe to the WSIT.[6] (Id.) There is a reasonable inference that the "object to be accomplished" encompasses the three-month implementation schedule followed by Defendant's immediate obligation to require that all Wingstop locations subscribe to the WSIT. These objectives could be completed within one year. Therefore, the Court declines to find, at this juncture, that Plaintiff's breach of contract claim is barred by the Florida Statute of Frauds concerning performance within a one-year period.

---

[6] The Scope Document states: "Once all features listed in this scope document have been designed and tested, the WSIT will be ready for release. At that time, all corporate stores and franchisees will be required to subscribe to the WSIT."

**D.   Promissory Estoppel**

Defendant next argues that the Statute of Frauds bars Plaintiff's promissory estoppel claim, asserted in Count Two. Defendant asserts that if Plaintiff's breach of contract claim fails because the contract is unenforceable under the Statute of Frauds, Plaintiff may not simply re-label the action to seek an equitable remedy. (Doc. # 15 at ¶ 3).

However, the Court has ruled that the Statute of Frauds does not bar Plaintiff's breach of contract claim at this stage of the proceedings. Thus, the Court declines to rule that the promissory estoppel claim fails by application of the Statute of Frauds.

**E.   Fraudulent Inducement**

Defendant contends that it is entitled to judgment on the pleadings as to Count Five, for fraudulent inducement, because Plaintiff failed to plead all of the necessary elements for fraudulent inducement.[7]

To prove fraudulent inducement, a plaintiff must show that "(1) a false statement was made regarding a material

---

[7] Defendant also argues that Florida law prevents Plaintiff from seeking a remedy in tort for enforcement of a contract barred by the Statute of Frauds. (Doc. # 15 at ¶ 3). However, because the Court has determined that the Statute of Frauds does not bar Plaintiffs' breach of contract claim, the Court need not address this argument at this time.

fact; (2) the person making the statement knew or should have known it was false; (3) the maker intended that the other party rely on the false statement; and (4) the other party justifiably relied on the statement to its detriment." White Const. Co., Inc. v. Martin Marietta Materials, Inc., 633 F.Supp.2d 1302, 1325-1326 (11th Cir. 2009). Defendant asserts that Plaintiff has failed to plead the third element--that the maker intended that the other party rely on the false statement.

"A claim for fraud in the inducement must be pled with particularity." (Tindall v. Gibbons, 156 F.Supp.2d 1292, 1298 (M.D. Fla. 2001) (citing Fed. R. Civ. P. 9(b)). Here, the Complaint alleges that Defendant stated its intention to make the WSIT mandatory for all Wingstop locations, that Defendant knew the statement was false, and that Plaintiff reasonably relied upon the statement at substantial cost. (Doc. # 2 at ¶¶ 44-47). Plaintiff did not allege that Defendant intended for Plaintiff to rely upon the statement. In response to the Motion, Plaintiff contends that discovery is needed to ascertain the intent of the parties.

Upon due consideration, the Court grants Defendant's Motion with regard to the fraudulent inducement claim. However, in an abundance of cation and in the interests of

14

fairness, the Court will allow Plaintiff to amend this Count to cure the deficiency.

**F.      Tortious Interference with a Business Relationship**

Defendant asserts that Plaintiff's tortious interference claim, as asserted in Count Four, fails because Defendant was not a "stranger" to the relationship between the Plaintiff and the Wingstop franchisees.  (Doc. # 15 at ¶ 4).  Furthermore, Defendant argues that it cannot be held liable for any tortious interference because it had a right to protect its financial interests.

"Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citation omitted).  Once the plaintiff states a prima facie case establishing these elements, "the burden shifts to the defendant to establish that the interference was justified." Abusaid v. Hillsborough County Bd. of County Comm'rs., 8:03-

cv-904-T-23TBM, 2007 U.S. Dist. LEXIS 65813, at *62 (M.D. Fla. Sept. 6, 2007) (citations omitted).

However, a tortious interference claim survives only if it is made against a third party--a stranger to the transaction. As stated in <u>Abusaid</u>, "An action for tortious interference may not be raised by one party to the agreement against the other party to the agreement." <u>Id.</u> at *64.

Defendant's assertion that any interference with Plaintiff's relationship with its franchisees was justified might be arguable. However, Florida law forecloses this Court from ever reaching that analysis. A tortious interference claim may be sustained only against a third party, and Defendant clearly is not a third party: The Scope Document required Defendant to compel all Wingstop locations, including franchisees, to subscribe to the WSIT. Therefore, the Court grants Defendant's Motion regarding the tortious interference claim.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Judgment on the Pleadings (Doc. # 15) is **GRANTED in part and DENIED in part** as follows: Defendant is entitled to Judgment on the Pleadings as to Count Four of Plaintiff's complaint (Plaintiff's tortious

16

interference with a business relationship claim). Further, Count Two of Plaintiff's complaint is dismissed with leave to amend within ten days of the date of this Order. If Count Two is not amended in a timely fashion, Count Two will be dismissed with prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u> day of October 2009.

                                             VIRGINIA M. HERNANDEZ COVINGTON
                                                UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record